## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION |
| v. | ) | |
| | ) | No. 07-20136-KHV |
| GUSTAVO G. PENALOZA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

On October 3, 2007, the grand jury returned a one-count indictment which charged Gustavo

G. Penaloza with being an illegal alien in possession of a firearm in violation 18 U.S.C. §§ 922(g)

and 924(a)(2).  See Indictment (Doc. #10).  This matter comes before the Court on defendant's

Motion To Suppress Evidence And Statements (Without Suggestions) (Doc. #22) filed

December 12, 2007.  On January 7, 2008, the Court held an evidentiary hearing on the motion.  For

reasons stated below the Court overrules the motion.

### Factual Background

Based on the testimony and exhibits at the hearing on defendant's motion, the Court finds

the following facts:

In early September of 2007, Kansas City, Missouri police officers contacted Guadalupe

Pizarro and solicited cocaine from him.  On September 14, 2007, an undercover officer met Pizarro

at his residence – 2116 Riverview, Kansas City, Kansas – to negotiate the future sale of two

kilograms of cocaine.  During this negotiation, Pizarro told the undercover officer that his outside

source would supply the cocaine.

On September 19, 2007, at approximately 3:00 p.m., the undercover officer and Pizarro

engaged in a series of telephone conversations regarding the drug transaction.  They arranged to complete the sale at Pizarro's residence that same day.  Pizarro told the undercover officer that once the outside supplier delivered the cocaine, it would remain at the residence for only 30 minutes. Police officers for Kansas City, Missouri then enlisted the assistance of the police department in Kansas City, Kansas ("KCKPD").  KCKPD detective Greg Lawson obtained an anticipatory search warrant for Pizarro's residence which, as prerequisites to execution of the warrant, required that the undercover officer make contact with Pizarro and that Pizarro verify that the cocaine was at his residence.

Some time between 4:00 and 4:10 p.m. on September 19, 2007, officers established surveillance of Pizarro's residence and began observing traffic in and out of the area.  At approximately 4:10 p.m., KCKPD officer Nathan Doleshal arrived at the scene, parked down the block from Pizarro's residence and observed a red Jeep Cherokee with two males inside parked on the opposite side of the street, just west of the residence.  Approximately five minutes later, Officer Doleshal saw the passenger of the red Cherokee exit the vehicle and walk toward the front of the residence, out of his view.  Shortly thereafter, Officer Doleshal saw the passenger exit the rear of the residence and remain in the back yard with another male.  The red Cherokee remained parked west of the residence with defendant – the driver – inside.

At approximately 4:30 p.m., the undercover officer contacted Pizarro, who confirmed that he was at the residence with the cocaine.  Having satisfied the prerequisites of the anticipatory search warrant, a tactical vehicle and a team of officers began to approach the front of the residence.  The vehicle and the officers were clearly identified as law enforcement and approached from behind the red Cherokee, within defendant's view.  During the approach, officers saw defendant drive away

from the residence at a relatively high rate of speed.

KCKPD captain Bill Howard followed the red Cherokee and pulled defendant over a few blocks from Pizarro's residence.  After defendant stopped, Captain Howard approached the vehicle with his gun drawn and ordered defendant (several times) to raise his hands.  Defendant did not immediately comply and Captain Howard observed that defendant kept looking down at his hands.  Captain Howard testified that he thought defendant may have been fidgeting with something in his hands.  Eventually, defendant raised his hands and officers removed him from the vehicle.  After officers removed defendant from the vehicle, Captain Howard observed what he believed to be the handle of a pistol protruding from under the driver's seat.  Detective Lawson also observed the object and believed that it was a pistol.  Knowing that city ordinance prohibited possession of a pistol, Captain Howard reached under the seat to remove the object and confirm that it was in fact a pistol.  Once he confirmed that it was a pistol, officers arrested defendant for unlawful possession of a firearm.

After the arrest, KCKPD officer Pat Callahan prepared a consent form to search the red Cherokee.  After KCKPD officer Raymond Nunez explained to defendant the general contents of the consent form in Spanish, defendant signed the form.  By this time, no officer at the scene was brandishing a gun.  Officer Nunez gave defendant his <u>Miranda</u> rights in Spanish, and defendant indicated that he understood.  Defendant expressed his desire to waive his <u>Miranda</u> rights and he proceeded to make statements to Officer Nunez regarding the pistol which Captain Howard had discovered in the vehicle.  The search of the vehicle recovered no additional evidence, but officers later learned that defendant was in the country illegally.

**Analysis**

Defendant argues that the Court should suppress the pistol and the statements which he made to officers because (1) Captain Howard did not have reasonable suspicion to stop him; (2) officers recovered the pistol without a warrant or consent to search the vehicle; and (3) defendant did not knowingly and intelligently waive his Miranda rights.

**I.      The Traffic Stop**

Defendant argues that Captain Howard did not have reasonable suspicion to stop him.  The law is well established that a traffic stop constitutes a seizure for purposes of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." Brendlin v. California, 127 S. Ct. 2400, 2406 (2007) (quoting Delaware v. Prouse, 440 U.S. 648, 653 (1979)). The legality of a traffic stop is analyzed under the investigative detention principles of Terry v. Ohio, 392 U.S. 1 (1968).  In cases of investigatory stops, the Fourth Amendment is satisfied if the officer's action is supported by "reasonable suspicion to believe that criminal activity may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal quotation omitted).  Reasonable suspicion requires a "particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981).  "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Arvizu, 534 U.S. at 274.  In determining whether reasonable suspicion existed, the Court considers the totality of the circumstances, United States v. Sokolow, 490 U.S. 1, 8 (1989), including the collective knowledge of those officers involved in the investigation, United States v. Hinojos, 107 F.3d 765, 768 (10th Cir. 1997).  The government bears the burden of proving the

reasonableness of the officers' suspicion.  United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998); see also United States v. Lutz, 207 F. Supp.2d 1247, 1255 (D. Kan. 2002) ("When faced with a motion to suppress evidence obtained as an incident to a traffic stop, the Government must present evidence to show that the traffic stop was justified by a reasonable, articulable suspicion of illegal activity.").

Here, the government has not argued that defendant committed any traffic violation which would have justified the traffic stop.  The legality of the traffic stop therefore turns on the extent to which officers could reasonably suspect that defendant was involved in the drug transaction between Pizarro and the undercover officer.  See United States v. Betancur, 24 F.3d 73, 78 (10th Cir. 1994) (citing Florida v. Royer, 460 U.S. 491, 498-99 (1983)) (temporary detention justified where officer has reasonable suspicion of illegal drug transaction or other serious crime).  Here, the evidence clearly demonstrates reasonable suspicion.  From the undercover officer's conversations with Pizarro, officers reasonably deduced that Pizarro would receive a delivery of cocaine shortly before the arranged drug transaction.  Officers then established surveillance of Pizarro's residence in advance of the drug transaction and saw two males parked in a red Cherokee outside of the residence. Officers saw the passenger exit the red Cherokee, walk toward the front of the residence and emerge from the rear of the residence.  Defendant waited in the red Cherokee for approximately 15 minutes while the passenger remained at the residence.  While defendant waited, officers learned that Pizarro had cocaine inside the residence and they began to execute a search warrant of the residence by approaching the front of the residence in defendant's view.  When officers began the approach, defendant drove away from the scene at a relatively high rate of speed.

In United States v. Perdue, 8 F.3d 1455 (10th Cir. 1993), the Tenth Circuit found reasonable

suspicion in similar circumstances.  In that case, officers witnessed defendant driving toward an

isolated house suspected to be a drug manufacturing site.  When defendant saw officers executing

a search warrant on the house, he turned around and began to drive away from the property.  Two

officers followed defendant and stopped him.  On the issue of reasonable suspicion, the Tenth Circuit

stated that

> Since the property is rural and set back from the road, anyone driving up the lane to
> the building containing the contraband was justifiably suspect. Thus, Mr. Perdue's
> mere arrival at the property being searched was a suspicious circumstance. When the
> car suddenly turned around and attempted to leave after its passengers came into view
> of the police activity surrounding the shed, the officers had an articulable, reasonable
> basis for making the stop and investigating further.

Perdue, 8 F.3d at 1462.  Here, defendant's passenger exited the red Cherokee and entered Pizarro's

residence while defendant waited outside.  Within minutes, the officers learned from Pizarro that the

cocaine had arrived at the residence.  In these circumstances, defendant's presence at the residence

made him justifiably suspect.  When defendant waited for approximately 15 minutes and drove away

from the residence at a relatively high rate of speed when officers began to execute their search

warrant, his actions provided a particularized and objective basis for Captain Howard to believe that

he was involved in the drug transaction.  This reasonable suspicion justified the subsequent traffic

stop.  Id.; see also Illinois v. Wardlow, 528 U.S. 119, 125 (2000) (although individual's conduct may

be ambiguous and susceptible to innocent explanation, officers may detain individual to resolve

ambiguity); United States v. Harvey, 897 F.2d 1300, 1304 (5th Cir. 1990), overruled on other

grounds by United States v. Lambert, 984 F.2d 658 (5th Cir. 1993) (driving up next to drug house

during search established reasonable suspicion).  Because Captain Howard had reasonable suspicion

to conduct the investigatory traffic stop under the totality of the circumstances, the Court overrules

defendant's motion to suppress on that ground.

## II.      Recovery Of The Pistol

Defendant argues that officers recovered the handgun without a warrant or consent to search his vehicle.  The government does not argue that it had a warrant to search defendant's vehicle, but the "plain view" exception to the exclusionary rule allows an officer to seize evidence of a crime without a warrant if (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent, i.e. the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.  United States v. Carey, 172 F.3d 1268, 1272 (10th Cir.1999); United States v. Sanchez, 89 F.3d 715, 719 (10th Cir.1996).

These conditions are easily satisfied in this case.  Defendant does not complain of his initial removal from the vehicle, and the established case law supports such removal.  See United States v. Garcia, 459 F.3d 1059, 1064 (10th Cir. 2006) (individual's involvement with drug transactions or distribution can support reasonable suspicion to frisk individual for weapons); United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998) (when officer has reasonable suspicion that illegal drugs are in vehicle, absent factors allaying his safety concerns, he may order occupants out of vehicle and pat them down briefly for weapons to ensure officer safety and safety of others).  Once officers opened the driver's door and removed defendant from the vehicle, Captain Howard and Detective Lawson were lawfully in a position to observe the handle of pistol protruding from under the driver's seat. The incriminating nature of the object was immediately apparent because, as Captain Howard testified, firearms are illegal to possess in Kansas City, Kansas.  Finally, Captain Howard had a lawful right of access to the pistol because he believed that possession of the firearm was illegal under city ordinance.  See Soldal v. Cook County, Ill., 506 U.S. 56, 68 (1992) (seizure of property

in plain view without warrant authorized only when probable cause exists to associate property with criminal activity). Because the seizure of the pistol satisfies the conditions of the plain view exception, the Court overrules defendant's motion to suppress that evidence.

### III.    Waiver Of <u>Miranda</u> Rights

Defendant argues that he did not knowingly and intelligently waive his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), before giving statements to officers after his arrest. To be valid, a defendant must voluntarily, knowingly and intelligently waive his rights. <u>Id.</u> at 444. For a waiver to be involuntary, the Court must find that police action was coercive. <u>See</u> <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986) (relinquishment of <u>Miranda</u> rights must have been voluntary in sense that it was product of free and deliberate choice rather than intimidation, coercion or deception). A waiver is knowing and intelligent only if it was made with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>United States v. Minard</u>, No. 05-6089, 2006 WL 3598396, at *2 (10th Cir. Dec. 12, 2006) (quoting <u>Moran</u>, 475 U.S. at 421). A defendant need not, however, understand all the consequences of the waiver. <u>Id.</u> (citing <u>Colorado v. Spring</u>, 479 U.S. 564, 574 (1987)). He need only understand that he has the right to remain silent and that his statements may be used against him if he does not. <u>Id.</u> The government bears the burden of proving that defendant's waiver of <u>Miranda</u> rights was knowing and voluntary. <u>United States v. Nelson</u>, 450 F.3d 1201, 1210-11 (10th Cir. 2006).

Here, Officer Nunez advised defendant in Spanish that he was under arrest and that he had certain <u>Miranda</u> rights. Defendant indicated to Officer Nunez that he understood his rights and that he wished to waive them. The officers did not have their guns drawn when defendant waived his <u>Miranda</u> rights, and the Court finds no evidence that they coerced, intimidated or deceived defendant

into making the waiver.  Defendant's waiver of <u>Miranda</u> rights was knowing and voluntary, and the Court therefore overrules defendant's motion to suppress his statements.

**IT IS THEREFORE ORDERED** that defendant's <u>Motion To Suppress Evidence And Statements (Without Suggestions)</u> (Doc. #22) filed December 12, 2007 be and hereby is **OVERRULED**.

Dated this 14th day of January, 2008 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge